UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WALSH CONSTRUCTION<br>COMPANY II, LLC,<br>929 W. Adams Street<br>Chicago, Illinois 60607 | :<br>:<br>:<br>: |
| | : |
| Plaintiff, | :<br>: |
| v. | :  Case No. _____ |
| | : |
| UNITED STATES SURETY COMPANY,<br>Serve: One Texas Station Court, Suite 230<br>Timonium, Maryland 20193 | :<br>:<br>: |
| | : |
| AND | :<br>: |
| U.S. SPECIALTY INSURANCE COMPANY<br>Serve: 13403 Northwest Freeway<br>Houston, Texas 77040-6094 | :<br>:<br>: |
| | : |
| Defendants. | : |

## **COMPLAINT**

WALSH CONSTRUCTION COMPANY II, LLC ("Walsh"), by counsel, states as

follows in support of its Complaint against United States Surety Company ("United States

Surety") and U.S. Specialty Insurance Company ("U.S. Specialty").

## **Parties**

1.      Walsh is a limited liability company organized and existing under the laws of the

State of Illinois, with its principal offices located in Chicago, Illinois.  Walsh is, and has been for

many years, engaged in the business of general contracting throughout the United States.

2.      Defendant United States Surety is, upon information and belief, a corporation

organized under the laws of the State of Maryland, with its principal offices located in

Timonium, Maryland.  Upon information and belief, United States Surety is in the business of, among other things, the furnishing of surety bonds on public and private projects.

3.      Defendant U.S. Specialty is, upon information and belief, a Texas corporation with its principal offices located in Houston, Texas.  Upon information and belief, U.S. Specialty is in the business of, among other things, the furnishing of surety bonds on public and private projects. (U.S. Specialty and United States Surety are collectively referred to as "Surety" in this Complaint).

## Jurisdiction and Venue

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy, exclusive of interest and costs exceeds $75,000.00.

5.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because the construction project that is the subject matter of this litigation is located in the District of Columbia.

## Factual Background

6.      In 2015, Walsh entered into a Construction Services Agreement with Adams Morgan Hotel Owner, LLC, to construct the Adams Morgan Historic Hotel located at 1780 Columbia Road, N.W., Washington, DC 20009 ("Project").

7.      In May of 2015, Walsh entered into a Subcontract Agreement with Mid-Atlantic Air, Inc. ("Mid-Atlantic"), whereby Mid-Atlantic agreed to provide all labor, materials, tools, supervision and equipment necessary to complete the heating, ventilating, air-conditioning and plumbing in connection with the Project (the "Subcontract"). The Subcontract was in the amount of $8,425,000.00. A copy of the Subcontract and Exhibit A are attached as **Exhibit 1**.

8.      The Subcontract required that Mid-Atlantic provide Payment and Performance Bonds to assure the performance of Mid-Atlantic's work.

9.      The Subcontract required that Mid-Atlantic timely pay all claimants providing labor or material for the Project.

10.      On or about June 18, 2015, Mid-Atlantic as Principal, and Surety as Co-Sureties, issued a Subcontractor Performance Bond (the "Bond") to Walsh as obligee.  A copy of the Bond is attached as **Exhibit 2**.

11.      The Bond has a penal sum of $8,425,000.00, and increased directly with the amount of any amendments issued to the Subcontract.

12.      Mid-Atlantic's performance on the Project was unsatisfactory.  It performed a considerable amount of work in a deficient manner or which did not conform to the prime contract documents and Subcontract requirements.

13.      Walsh attempted to work with Mid-Atlantic to correct Mid-Atlantic's numerous deficiencies.

14.      As of April, 2017, Mid-Atlantic's manpower allocated to the Project began to diminish.

15.      On April 13, 2017, Walsh, through a representative, met with Mid-Atlantic's representative Rich Leeland to express Walsh's concerns with Mid-Atlantic's inability to provide sufficient manpower on the Project.

16.      Walsh continually requested that Mid-Atlantic provide additional manpower in order to meet the Project schedule.

17.      On or about April 20, 2017, Walsh notified Mid-Atlantic that it was in default due to lack of manpower, significant amounts of rework, and failure to maintain the Project schedule,

as required by Sections 1.1, 2.1, and 8.1 of the Subcontract.  A copy of the Notice of Default, without exhibits, is attached as **Exhibit 3**.

18.     At the time the Notice of Default was issued, Mid-Atlantic still had remaining work in all floors of the hotel tower, throughout the church, and the penthouse.

19.     The Notice of Default provided Mid-Atlantic with 72 hours' notice in accordance with Section 8.1 of the Subcontract, to commence and continue satisfactory correction of its default.

20.     Mid-Atlantic failed to commence and continue satisfactory correction of its default within the 72 hour requirement.

21.     At the same time, Walsh notified Surety of Mid-Atlantic's default and formally made a claim on the Bond. A copy of the Notice to Surety is attached as **Exhibit 4**.

22.     On or about April 28, 2017, Mid-Atlantic advised Walsh that Mid-Atlantic had closed its field and home office operations and abandoned the Project.  Upon information and belief, Mid-Atlantic abandoned all or substantially all of its projects in various locations in the United States.

23.     The abandonment of the Project is an additional default under Section 8.1 of the Subcontract.

24.     Simultaneously, a key subcontractor to Mid-Atlantic left the Project.

25.     In response to Walsh's claim on the Bond, the Surety retained Guardian Group, Inc. ("Guardian") to evaluate the Project, and also retained W.G. Tomko, Inc. ("Tomko"), to perform Mid-Atlantic's Subcontract work.

26.     The Surety requested, and was granted, two 50-day extensions pursuant to Article 4(e) of the Performance Bond in order to allow Surety to conduct an independent investigation.

27.     On or about May 31, 2017, Surety entered into an Interim Completion Agreement with Tomko to continue performance of the Subcontract work on the Project.

28.     The Surety also provided a draft Takeover Agreement, which Walsh declined as it was not required, nor contemplated, by the terms of the Bond.

29.     On or about July 28, 2017, and despite Mid-Atlantic's and the Surety's prior admissions that Mid-Atlantic was incapable of performing the Subcontract work, Surety, through its counsel, wrongfully and improperly denied liability under the Bond and indicated that it would not further perform under the Bond.

30.     The alleged reasons provided by the Surety as a basis for its denial of liability were incorrect and without merit as a matter of fact and law.

31.     All of Walsh's actions were in accordance with the terms and conditions of the Subcontract and Bond.

32.     Because of the Surety's failure to honor its obligations under the Bond, Walsh has been required to complete the Subcontract work at its own cost and expense.

33.     Walsh has hired a completion contractor recommended by Surety and has incurred considerable loss, cost, damage and expense in completing the Subcontract work directly resulting from Mid-Atlantic's defective work and the Surety's wrongful refusal to perform under the Bond.

34.     At this time, the Project is still ongoing; however, Walsh has, or is anticipated to incur loss, cost and damage in excess of $6 million, for which Surety is liable to Walsh pursuant to the Bond.

35.     In particular, and including but not limited to, Walsh has uncovered, and continues to uncover, significant defective work performed by Mid-Atlantic prior to its default

and departure, or which was performed by the completion contractor retained by Surety, which has led to additional cost and expense, Project delays, and extensive administrative time for Walsh's personnel to manage the issues.

## Count I
## (Breach of Bond Agreement)

36.     Walsh incorporates by reference the allegations of Paragraphs 1-35 as if fully set forth herein.

37.     Surety breached the Bond by failing to fulfill its obligation to complete the work or otherwise perform under the Bond.

38.     Surety breached the Bond by not engaging in good faith and fair dealing by claiming that Mid-Atlantic was improperly defaulted on the Project, even though Mid-Atlantic had shut its doors and ceased doing business across the United States.

39.     Surety breached the Bond by not engaging in good faith and fair dealing by commencing performance in place of Mid-Atlantic and then claiming, prior to completion of work, that it had no further obligations to Walsh.

40.     The claim that Surety had no obligation to Walsh was not made in good faith given that Surety acknowledged its responsibilities when it tendered the Takeover Agreement to Walsh.

41.     The reasons tendered for ceasing work, namely that Walsh had not fully paid Mid-Atlantic for contract and change order work, were contrived as: (1) Walsh did not have an obligation to pay Mid-Atlantic until Walsh was paid by the owner, which had not occurred; (2) the Subcontract required that the owner approve the pending change orders, which had not occurred; and (3) the Subcontract allowed Walsh to withhold and unilaterally deduct amounts

otherwise due under the Subcontract, to cover Walsh's reasonable estimate of any costs or liability Walsh has incurred or may incur for which Mid-Atlantic may be responsible.

42.     As a direct and proximate result of Surety's breaches of the Bond as aforesaid, Walsh has been damaged in an amount not yet known, but estimated to exceed $6 million.

43.     Pursuant to Articles 6 and 7 of the Bond and Articles 8.1 and 9.1 of the Subcontract, Walsh is entitled to recover its reasonable attorneys' fees, costs and expenses of whatever kind or nature, associated with either this litigation or dispute arising from the Bond.

44.     Walsh has complied with all of its obligations under the terms of the Bond, except to the extent waived, excused or prevented.

WHEREFORE, Plaintiff, WALSH CONSTRUCTION COMPANY II, LLC, respectfully requests that the Court enter a judgment against UNITED STATES SURETY COMPANY and U.S. SPECIALTY INSURANCE COMPANY:

A.     For an amount to be determined at trial, but estimated to exceed $6 million;

B.     For interest on all amounts found to be due;

C.     For its reasonable attorneys' fees, costs and expenses of whatever kind or nature, associated with either this litigation or dispute arising from the Bond; and

D.     For such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

WALSH CONSTRUCTION COMPANY, II, LLC
By Counsel


s/ Joseph H. Kasimer
Joseph H. Kasimer
D.C. Bar No. 230565
Mariam W. Tadros
D.C. Bar No. 1000548
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No.  (703) 848-2530
jkasimer@reesbroome.com
mtadros@reesbroome.com
*Counsel for Walsh Construction Company, II, LLC*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **COMPLAINT** was filed with the Clerk of the Court by using the CM/ECF system on and electronically transmitted on October 31, 2017.


/s/ Joseph H. Kasimer
Joseph H. Kasimer, D.C. Bar No. 230565
Mariam W. Tadros, D.C. Bar No. 1000548
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
Tel: (703) 790-1911
Fax: (703) 847-0463
jkasimer@reesbroome.com
mtadros@reesbroome.com
*Counsel for Plaintiff Walsh Construction
     Company II, LLC*


2040195/23896

8